**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

APR 13 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

|  |  |
|---|---|
| ANGREJ SINGH,<br><br>Petitioner,<br><br>v.<br><br>WILLIAM P. BARR, Attorney General,<br><br>Respondent. | No.   16-73612<br><br>Agency No. A078-455-428<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted December 5, 2019[**]
San Francisco, California

Before: W. FLETCHER and MILLER, Circuit Judges, and PREGERSON,[***]
District Judge.

Angrej Singh, a native and citizen of India, petitions for review of a Board

of Immigration Appeals order dismissing his appeal from an immigration judge's

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***]     The Honorable Dean D. Pregerson, United States District Judge for
the Central District of California, sitting by designation.

decision denying his application for asylum, withholding of removal, and protection under the Convention Against Torture. We deny the petition.

1.      Substantial evidence supports the agency's finding that Singh no longer has a well-founded fear of persecution in India because country conditions have fundamentally changed. *See* 8 C.F.R. §§ 1208.13(b)(1)(i)(A) (asylum), 1208.16(b)(1)(i)(A) (withholding of removal).

In *Jagtar Singh v. Holder*, 753 F.3d 826 (9th Cir. 2014), we considered the sufficiency of country-conditions reports to show changed circumstances and rebut the presumption of future persecution. We concluded that the agency could rely on such documentary evidence when making an individualized determination that an applicant no longer had an objectively well-founded fear of persecution. *Id.* at 834–35.

Here, the government submitted country-conditions reports prepared by the U.S. State Department and the U.K. Home Office in 2007 and 2008. The agency rationally construed the documentary evidence to conclude that Singh, as a low-level member and supporter of the Akali Dal Mann political party in the 1990s, would no longer face persecution in India.

As we recognized in *Jagtar Singh*, the country-conditions reports "make no mention of either ongoing persecution of Sikhs or any risk of renewed persecution of individuals because they are Sikh, [or] members of Akali Dal (Mann)." 753 F.3d

2

at 833. For more than a decade, the State Department has found that "conditions for Indian Sikhs differ dramatically from those of the 1980s and 1990s." The Shiromani Akali Dal is a legal political party, and Sikhs participate in the "highest levels of the Indian government." "Any current persecution of Sikhs based on political or religious beliefs would be widely covered by India's vibrant and open media." According to the U.K. Home Office, even current "rank and file" members of militant Sikh-Khalistan separatist groups are unlikely to face persecution because those groups have not engaged in recent activity sufficient to attract the adverse attention of Indian authorities. Similarly, "individuals associated at a low or medium level with Sikh militant groups" are also unlikely to face persecution.

Reviewing the totality of the evidence, the agency reasonably concluded that if current members of Sikh militant groups are not likely to be persecuted, then neither would someone like Singh, who was merely a member of the Akali Dal Mann political party more than 15 years ago.

Singh argues that his fear continues to be objectively well-founded because in the early 1990s, he was linked to a known Sikh terrorist named Rattan Singh. While the country-conditions reports suggest an "active operational member" or "hard-core" militant for a current Sikh separatist group might face persecution, the record does not show that Rattan Singh is a high-level priority of that type, nor that Angrej Singh's association with him over a decade ago would be of any interest to

3

Indian authorities. To the contrary, the immigration judge found that there was no verifiable indication that Rattan Singh remained active as a militant in India. Substantial evidence supports that finding. Substantial evidence also supports the agency's finding that no credible evidence suggests Indian authorities have a continuing interest in Rattan Singh or his associates.

2.      We have held that the agency can weigh country-conditions reports against contrary documentary evidence submitted by an applicant, such as affidavits from family members. *Jagtar Singh*, 753 F.3d at 835. The factfinder is permitted to consider the probative value of hearsay testimony, and discount it. *Id.*; *see Gu v. Gonzales*, 454 F.3d 1014, 1021 (9th Cir. 2006). The agency did not err by affording unverified local news articles diminished weight. The immigration judge articulated specific, cogent reasons for giving that evidence less weight than the country-conditions reports.

3.      Our decision in *Jagtar Singh* did not address relief under the Convention Against Torture, but its reasoning applies with equal force to that claim. The pertinent regulation requires consideration of "information regarding conditions in the country of removal" that may be "relevant to the possibility of future torture." 8 C.F.R. § 1208.16(c)(3)(iv). Substantial evidence supports the agency's determination that Singh was unlikely to be tortured by or with the acquiescence of the Indian government under current conditions in India.

4

4.      The Board did not abuse its discretion when it denied Singh's motion to remand to introduce additional country-conditions evidence. *See* 8 C.F.R. § 1003.2(c)(1). Substantial evidence supports the Board's determination that the evidence was not new and did not reflect a material change in country conditions relevant to Singh's claims for relief. *See Najmabadi v. Holder*, 597 F.3d 983, 986 (9th Cir. 2010).

**PETITION DENIED**.

*Angrej Singh v. William P. Barr*, No. 16-73612

PREGERSON, D., dissenting:

I respectfully dissent. Although I agree with the majority that the government rebutted the presumption that Petitioner has a well-founded fear of future persecution based on his membership in the Akali Dal Mann political party, the government did not meet its burden with respect to Petitioner's fear of future persecution on the basis of his perceived support for Sikh militant Rattan Singh. Accordingly, I would grant the petition for review.

Petitioner testified that police persecuted him not only because of his membership in the Akali Dal Mann party, but also because they believed that Petitioner aided a Sikh militant named Rattan Singh. Petitioner's credible testimony established that Petitioner suffered past persecution on the basis of his perceived support for Rattan Singh, and gave rise to a presumption of future persecution. *See Popova v. I.N.S.*, 273 F.3d 1251, 1259 (9th Cir. 2001) ("A finding of past persecution raises the presumption that an asylum-seeker has a well-founded fear of future persecution . . . ."). Although a presumption of future persecution is rebuttable, it is the government's burden to overcome the presumption by a preponderance of the evidence. *Id.*

The majority correctly recognizes that the agency can rely on country conditions reports "when making an individualized determination that an applicant

no longer ha[s] an objectively well-founded fear of persecution."  Maj. at 2 (citing

*Jagtar Singh v. Holder*, 753 F.3d 826, 834–35 (9th Cir. 2014)).  Unlike the

majority, however, I cannot conclude that any *individualized* determination was

ever made in this case.[1]  This Court has repeatedly emphasized the significance of

an individualized determination.  "[W]e have long held that the determination of

whether or not a particular applicant's fear is rebutted by general country

conditions information requires an individualized analysis that focuses on the

specific harm suffered and the relationship to it of the particular information

contained in the relevant country reports."  *Chand v. I.N.S.*, 222 F.3d 1066, 1079

(9th Cir. 2000); *see also Ali v. Holder*, 637 F.3d 1025, 1030 (9th Cir. 2011) ("To

be sure, country reports may be employed to rebut the presumption, but the IJ and

BIA must apply the findings from the reports to the petitioner's specific harms and

circumstances.").  "The hallmark of an 'individualized determination' is a tailored

analysis of the petitioner's specific harms and circumstances."  *Ali*, 637 F.3d at

1030; *see also Jagtar Singh*, 753 F.3d at 834 ("In addition to requiring sufficiently

*individualized evidence* of changed circumstances in the petitioner's country of

origin, we have also required the agency to 'make an *individualized determination*'

of the petitioner's claim for relief by 'assessing the impact of changed country

---

[1] The majority's conclusion is implicit in its discussion, which does not address the
sufficiency of the agency's individualized analysis.

2

conditions on an individualized basis' . . . [i]n other words, we have not credited overbroad and conclusory statements that fail to reference relevant evidence.") (emphasis in original) (internal citations omitted) (quoting *Lopez v. Ashcroft*, 366 F.3d 799, 806 (9th Cir. 2004)).

Here, the country reports stated that it is unlikely that rank and file members of Sikh militant groups would be able to establish a well-founded fear of persecution. As the majority acknowledges, however, the reports also indicated that "active" or "hard-core" militants might face continued persecution. The IJ and BIA relied upon the country reports to conclude that Petitioner no longer had a well-founded fear of future persecution because he was perceived to have "aided a Sikh militant." Neither the IJ nor the BIA, however, made any effort to determine whether Rattan Singh, the militant with whom Petitioner was perceived to be associated, qualified as a low-level, medium-level, or active, hard-core militant or, accordingly, whether Petitioner would be perceived as a low, medium, or high-level threat. Absent such an analysis, I cannot conclude that the country reports are relevant to Petitioner's fears or that the agency "appl[ied] the findings from the reports to the petitioner's specific harms and circumstances." *Ali*, 637 F.3d at 1030.[2]

---

[2] For similar reasons, I do not agree that the agency considered "relevant information" in determining whether Petitioner would more likely than not be tortured. *See* 8 C.F.R. § 1208.16(c)(3)(iv).

Unlike the IJ and BIA, the majority does look to specific details regarding Rattan Singh. The majority upholds the agency's conclusion regarding changed country conditions because (1) "the record does not show that Rattan Singh is a high-level priority," and (2) there is no evidence regarding Rattan Singh's current activities or evidence of authorities' continuing interest in Rattan Singh or his associates. As an initial matter, as discussed above, the agency did not make a finding regarding Rattan Singh or base its denial of Petitioner's asylum application upon any such finding. As such, the majority cannot rely upon its own independent analysis to uphold the agency's denial of asylum. *See Ali*, 637 F.3d at 1029 ("We cannot affirm the BIA or IJ on a ground upon which it did not rely . . . we must decide whether to grant or deny the petition for review based on the Board's [or IJ's] reasoning rather than our own independent analysis of the record.") (citations and quotations omitted).

Furthermore, as to the majority's first point that the record does not show that Rattan Singh is a "high-level" militant, I respectfully disagree. There is evidence in the record that Rattan Singh was the "alleged brain" behind the placement of bombs along railroad tracks, offered himself as a suicide bomber as part of a plot to assassinate the Prime Minister of India and other senior political leaders during an election campaign, was "responsible for a series of blasts," and

4

supplied other Sikh militants with explosives.  This evidence, which was before the BIA, is more than sufficient to show that Rattan Singh was "hard-core."

As to the majority's second point, the absence of evidence regarding Rattan Singh's current status, the majority essentially places an expiration date on the presumption that Petitioner has a well-founded fear of future persecution.[3]  The majority, like the BIA and IJ, assumes, without any specific evidentiary support, that enough time has passed that Indian authorities no longer care about Rattan Singh or his associates.  A presumption of past persecution, however, can only be rebutted by evidence, not by the mere passage of time.  To conclude otherwise would rob the term of all force and meaning.

To the extent that the majority's decision is rooted in the absence of a "verifiable indication that Rattan Singh remained active as a militant in India," the majority, like the agency, improperly shifts the burden of proof to Petitioner.  It is the government's burden, not Petitioner's, to establish by a preponderance of the evidence that being perceived as an accomplice of Rattan Singh no longer serves as a basis for a well-founded fear of future persecution.  *See Popova*, 273 F.3d at 1259.  Although the government could, perhaps, have satisfied that burden by

---

[3] Although the majority minimizes Petitioner's perceived relationship with Rattan Singh as an "association . . . over a decade ago," the fact of the matter is that the relationship was sufficient to establish past persecution and to create a presumption of future persecution.

5

demonstrating that Rattan Singh is no longer active, or with evidence that Indian authorities are no longer concerned about Rattan Singh or his supporters, it did not so much as attempt to do so.

Neither the BIA nor the IJ made a sufficiently individualized determination of the impact of changed country conditions on Petitioner's specific circumstances. The majority cannot substitute its own analysis for that of the agency and, in any event, fails to consider the evidence in the record and impermissibly shifts the burden of proof to Petitioner. Accordingly, I respectfully dissent, and would grant the petition for review and remand to the BIA.